Marion M. MacNeish MARRON,
Plaintiff,

v.

WHITNEY GROUP, Gary S. Goldstein,
and Alicia C. Lazaro, Defendants.

Gary S. Goldstein and Alicia C. Lazaro,
Third–Party Plaintiffs,

v.

Jeffrey T. Sussman, Third–
Party Defendant.

Civil Action No. 09–10163–JLT.

United States District Court,
D. Massachusetts.

Oct. 15, 2009.

Allison M. O'Neil, Christopher J. Panos, Craig & Macauley Professional Corporation, Boston, MA, for Plaintiff.

Kent D.B. Sinclair, Jessica M. Schauer, Seyfarth Shaw Two Seaport Lane, Boston, MA, for Defendants.

*MEMORANDUM*

TAURO, J.

I. *Introduction*

Plaintiff initiated an action against Defendants in Essex Superior Court, alleging breach of contract and violation of Mass. Gen. Laws, ch. 149, § 148. Defendants removed that action to this court on February 4, 2009. Defendants Gary S. Goldstein and Alicia C. Lazaro subsequently filed a Third–Party Complaint against Third–Party Defendant Jeffrey T. Sussman seeking indemnification and contribution.

Presently at issue are Third–Party Defendant's *Motion to Dismiss for Lack of Personal Jurisdiction* [# 26] and *Amended Motion to Dismiss for Lack of Personal Jurisdiction* [# 31]. For the reasons set forth below, Third–Party Defendant's *Amended Motion to Dismiss for Lack of Personal Jurisdiction* [# 31] is DENIED and Third–Party Defendant's *Motion to Dismiss for Lack of Personal Jurisdiction* [# 26] is DENIED AS MOOT.

## II. *Background* [1]

In the underlying complaint, Plaintiff Marion M. MacNeish Marron asserts claims against Whitney Group, LLC, Gary S. Goldstein, former chief executive officer of Whitney Group, and Alicia C. Lazaro, former employee of Whitney Group. The complaint primarily alleges a violation of Mass. Gen. Laws, ch. 149, § 148, based upon wages and commissions that she earned while employed by Whitney Group, but which she never received. The Third–Party Complaint asserts claims against Jeffrey T. Sussman, former chief financial officer of Whitney Group, for indemnification and contribution to Mr. Goldstein and Ms. Lazaro as to any judgment entered against them in relation to Ms. Marron's claims.

From 2004 until August of 2008, Mr. Sussman engaged in a scheme in which he secretly looted money from Whitney Group and advanced it to the Hunt–Scanlon Corporation, Christopher W. Hunt, and Scott Scanlon (collectively "Hunt–Scanlon"), without the knowledge or authorization of Whitney Group and for no legitimate business purpose. Mr. Sussman actively concealed these misappropriations until August 2008 when the company became so starved for cash that he had no choice but to confess his misconduct.

Although Hunt–Scanlon repaid some of the cash advances that it received over the four-year period, it failed to make good on numerous promises for substantial repayment. By August of 2008, Hunt–Scanlon owed Whitney Group more than $7,000,000.

Whitney Group first learned of Mr. Sussman's improper conduct on or about August 8, 2008, when a Whitney Group attorney informed Mr. Goldstein that Mr. Sussman had confessed to the misappropriations in an email. As a result of Mr. Sussman's systematic depletion of Whitney Group's funds, the company became unable to meet its financial obligations. In September 2008, Whitney Group ceased operations and initiated an Assignment for the Benefit of Creditors action in New York Supreme Court. Some of Whitney Group's payroll obligations remain outstanding to the present.

In October 2008, Mr. Sussman initiated a lawsuit in Suffolk County Superior Court, Commonwealth of Massachusetts, against Christopher Hunt and Hunt–Scanlon Corporation to enforce a promissory note entered into on August 18, 2008, just ten days after the discovery of Mr. Sussman's illicit financial relationship with Hunt–Scanlon.

On January 26, 2009, Ms. Marron, a former vice president in Whitney Group's Boston office, commenced an action in the Essex County Superior Court, Commonwealth of Massachusetts, seeking payment of wages and commissions that Whitney Group allegedly owes her. That action was removed to this court on February 4, 2009.

---

**1.** Because this issue arises in the context of a motion to dismiss, this court presents the facts in the light most favorable to the non-moving party's jurisdictional claim. *See Mass. Sch. of Law v. ABA,* 142 F.3d 26, 34 (D.Mass.1998).

Because Ms. Marron did not name Mr. Sussman as a defendant in the primary complaint, Mr. Goldstein and Ms. Lazaro asserted this Third–Party Complaint, seeking indemnification from Mr. Sussman for any liability that may be assessed against them due to Mr. Sussman's misappropriation of Whitney Group's funds and the company's resulting inability to pay Ms. Marron a substantial portion of the wages and commissions owed to her for her work at Whitney Group.

## III. *Discussion*

■ Mr. Goldstein and Ms. Lazaro argue that Mr. Sussman consented to the jurisdiction of the Massachusetts' courts when he purposely availed himself of the benefits and protections of the forum by instituting a suit in Massachusetts state court that arises from the same series of transactions as the instant action.[2] For the following reasons, this court agrees.

■ On a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists.[3] In diversity cases, plaintiffs must adduce evidence of specific facts sufficient to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.[4] In turn, this court will accept those "facts affirmatively alleged by the plaintiffs as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."[5]

The requirement of personal jurisdiction is intended to protect a defendant's liberty interests and, as with other such personal rights, it may be obviated by the defendant's consent to the court's jurisdiction.[6] Consent provides a basis for jurisdiction that exists independently of statutory rules and, therefore, the court may bypass traditional jurisdictional analysis under the long-arm statute where, as here, the defendant has voluntarily submitted himself to the jurisdiction of the forum state.[7]

■ A defendant can manifest consent in a number of ways: by failing to raise a jurisdictional defense in a timely manner, by expressing acquiescence to the forum, or by impliedly submitting to jurisdiction through conduct.[8] A defendant who purposely avails himself of a particular forum state's courts by initiating a lawsuit there impliedly submits to that forum's jurisdiction with regard to all actions arising from the same nucleus of operative facts, or sharing the same transactional core.[9]

---

**2.** *See* Opp. to Third–Party Def.'s Amended Mot. Dismiss at 5–7.

**3.** *See Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir.1992) (internal citations omitted).

**4.** *Id.* (internal citations omitted).

**5.** *Mass. Sch. of Law,* 142 F.3d at 34. *See also, Platten v. HG Berm. Exempted Ltd.,* 437 F.3d 118, 134 (1st Cir.2006).

**6.** *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.,* 940 F.2d 20, 22 (1st Cir.1991).

**7.** *See Gen. Contracting,* 940 F.2d at 22 (citing *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1199 (8th Cir.1990)) ("We bypass [analysis under the long-arm statute], not because we have substantial reason to question its soundness, but because of our conclusion that Trastco submitted itself to the court's personal jurisdiction by instituting suit No. 2, thus making a conventional long arm analysis irrelevant.").

**8.** *Id.*

**9.** *Id.* at 23. *See also, Lyman Steel Corp. v. Ferrostaal Metals Corp.,* 747 F.Supp. 389, 397 (N.D.Ohio 1990). It should be noted that a the courts of a forum state include those federal courts located within the state for purposes of personal jurisdiction. *Gen. Contracting,* 940 F.2d at 23 n. 4 (citing *Keeton v.*

Mr. Sussman brought suit against Hunt–Scanlon in the Massachusetts state action on a promissory note, which was entered into just ten days after Whitney Group discovered that Mr. Sussman had misappropriated millions of dollars from the company as part of an illicit financial relationship with Hunt–Scanlon. Mr. Sussman claims that the promissory note sued on in state court arose out of a personal loan that he made to Christopher Hunt after his employment with Whitney Group had been terminated.[10] This court, however, is obligated to construe the facts in a light most favorable to the Third–Party Plaintiffs' jurisdictional claim, whether or not Third–Party Defendant disputes those facts.[11] Accordingly, this court may infer that the state action was part of Mr. Sussman's effort to recoup the losses he caused Whitney Group in making illicit cash advances to Hunt–Scanlon. The state action, therefore, arises out of the improper financial relationship between Mr. Sussman and Hunt–Scanlon.

Similarly, whether Mr. Sussman is liable for indemnification and contribution in the current action turns on proof of the existence and nature of the improper financial relationship between Mr. Sussman and Hunt–Scanlon. Though the precise role of the promissory note in the overall relationship between Mr. Sussman and Hunt–Scanlon remains somewhat unclear, this court is satisfied, under the prima facie standard used to evaluate personal jurisdiction, that the two actions share a common transactional core.

The choice to sue in Massachusetts state court, or to abstain from doing so, was Mr. Sussman's alone to make. Having made that choice, he has waived his jurisdictional defense to the Third–Party complaint in the instant action, the pertinent facts of which arise from the same series of transactions that underlie the state action.[12] Mr. Sussman can claim no unfairness based upon this court's exercise of jurisdiction over him, since one who enjoys the full benefits of access to a forum's courts as plaintiff may not simultaneously claim immunity from that forum's authority as defendant.[13]

## IV. *Conclusion*

For the foregoing reasons, Third–Party Defendant's *Amended Motion to Dismiss for Lack of Personal Jurisdiction* [# 31] is DENIED and Third–Party Defendant's *Motion to Dismiss for Lack of Personal Jurisdiction* [# 26] is DENIED AS MOOT.

AN ORDER HAS ISSUED.

## *ORDER*

For the reasons set forth in the accompanying memorandum, this court hereby orders that Third–Party Defendant's *Amended Motion to Dismiss for Lack of*

---

*Hustler Magazine, Inc.*, 465 U.S. 770, 775–77, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). It is, therefore, irrelevant to the court's analysis that the Third–Party Defendant initiated suit in a Massachusetts state court, rather than federal court.

10. Def.'s Reply Brief ¶ 20.

11. *Mass. Sch. of Law*, 142 F.3d at 34.

12. *See Lyman Steel Corp.*, 747 F.Supp. at 397 ("Voluntarily filing a lawsuit ... where the facts similarly arise from the same series of events as another lawsuit can be deemed another indication of purposeful availment of the forum.").

13. *Gen. Contracting*, 940 F.2d at 23 ("In the same vein, a ruling that Trastco did not submit to the court's jurisdiction in Suit No. 1 when it instituted Suit No. 2 would produce an unjust asymmetry, allowing a party (here, Trastco) to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant....").

*Personal Jurisdiction* [# 31] is DENIED and Third–Party Defendant's *Motion to Dismiss for Lack of Personal Jurisdiction* [# 26] is DENIED AS MOOT.

IT IS SO ORDERED.