# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-IA-01820-SCT

*PEKIN INSURANCE COMPANY*

*v.*

*MARSHA R. HINTON AND THOMAS F. HINTON,*
*INDIVIDUALLY AND, AS THE WRONGFUL*
*DEATH BENEFICIARIES OF TIMOTHY R.*
*HINTON, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/2014 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| TRIAL COURT ATTORNEYS: | DORRANCE AULTMAN |
| | LAWRENCE E. ABERNATHY, III |
| | LESLIE D. ROUSSELL |
| | SAMUEL McHARD |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DORRANCE AULTMAN |
| | SARAH BETH WINDHAM |
| | ROBERT MARC CHEMERS |
| | RICHARD MANGIERI BURGLAND |
| ATTORNEYS FOR APPELLEES: | LAWRENCE E. ABERNATHY, III |
| | LESLIE D. ROUSSELL |
| | SAMUEL STEVEN McHARD |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED AND REMANDED - 04/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    In this interlocutory appeal, Pekin Insurance Company challenges the Jones County

Circuit Court's denial of its motion to dismiss for lack of personal jurisdiction. Pekin—an

Illinois company not licensed to sell insurance in Mississippi—asserts it had not entered a contract with a Mississippi resident, had not committed a tort in Mississippi, and had not done any business in Mississippi. So it cannot be subject to the jurisdiction of Mississippi courts under our long-arm statute.[1]

¶2. But Pekin *voluntarily* submitted itself to the jurisdiction of a Mississippi federal court, asking that court to resolve *the same coverage dispute* over which it now claims Mississippi has no jurisdiction. We hold that Pekin, by affirmatively seeking relief from a Mississippi court, impliedly consented to Mississippi's jurisdiction over the coverage dispute. Consequently, Pekin waived its defense that the Jones County Circuit Court lacked personal jurisdiction over it in the coverage-related claims lodged against it. Thus, we affirm the circuit court's order denying Pekin's motion to dismiss. And we remand this case to the circuit court for further proceedings consistent with this opinion.

## Background Facts and Procedural History

### I. Wrongful-Death Suit: *Jones County Circuit Court*

¶3. Timothy Hinton died after the safety harness on his treestand allegedly broke and he fell eighteen feet. C&S Global Imports, Inc., manufactured the stand, which came with a full body harness, tether, and tree strap. The manufacturer claimed the tree stand, harness, tether, and tree strap had a weight-bearing capacity of 350 pounds and a five-year warranty. Hinton, who weighed 250 pounds at the time of his fall, had bought the treestand and accompanying

---

[1] *See* Miss. Code Ann. § 13-3-57 (Rev. 2012).

2

safety harness from the retailer The Sportman's Guide three years before his fall. Timothy's

parents, Marsha and Thomas Hinton, filed a wrongful-death suit against C&S Global Imports

and The Sportsman's Guide in the Jones Count Circuit Court.[2]

## II.    First Declaratory Action: *Illinois State Court*

¶4.    The appellant, Pekin Insurance Co., found its way into the Hintons' lawsuit as the

liability insurer for C&S Global Imports. C&S Global Imports had tendered the defense of

the Hintons' lawsuit to Pekin. Pekin denied a defense, citing the treestand exclusion in

Pekin's policy.

¶5.    The Sportsman's Guide also requested a defense under C&S Global Imports' policy.

The Sportsman's Guide claimed it was an additional insured based on the certificate of

insurance. But Pekin rejected this claim too. According to Pekin, The Sportsman's Guide

was not a named insured. And even if it were, it was subject to the same treestand exclusion

in the C&S Global Imports policy.

¶6.    In March 2014, Pekin, an Illinois company, filed a declaratory action in Illinois state

court. Pekin asked that court to resolve the coverage issue between it and C&S Global

Imports and The Sportsman's Guide. Pekin also named the Hintons as defendants. C&S

Global Imports defaulted. Pekin then moved to voluntarily dismiss The Sportsman's Guide

---

[2] The Hintons also sued the Treestand Manufacturers Association and Hunter's View, the company whose logo appeared on the tree stand packaging. While the Treestand Manufacturers Association has answered the Hintons' second amended complaint, Hunter's View was never served process. The record suggests Hunter's View may have been a d/b/a for C&S Global Imports and not a separate legal entity.

3

and the Hintons.  In August 2014, the Illinois state court dismissed Pekin's action without making "any finding on the insurance coverage for C&S Global Imports," instead "leav[ing] all issue[s] of coverage to another Court in another jurisdiction."

### III.    Second Declaratory Action: *Mississippi Federal Court*

¶7.    The month before, while the Illinois action was still pending, Pekin filed a second declaratory action.  This time Pekin filed suit in the United States District Court for the Southern District of Mississippi.  Pekin named the The Sportsman's Guide and the Hintons as defendants, but not C&S Global Imports.  In its second declaratory action, Pekin asked the Mississippi district court to declare Pekin had no duty to indemnify C&S Global Imports[3] and no duty to defend or indemnify The Sportsman's Guide against the Hintons' wrongful-death lawsuit.

### IV.    Amended Wrongful-Death Suit: *Jones County Circuit Court*

¶8.    A month after the Illinois declaratory action was dismissed (so two months after Pekin filed the Mississippi declaratory action), the Hintons amended their wrongful-death complaint.  Their second amended complaint added Pekin as a defendant and asserted two new claims against the insurer.

¶9.    In Count 12, the Hintons brought their own declaratory action, asking the circuit court to adjudicate Pekin's rights and responsibilities connected to C&S Global Imports' liability

---

[3] C&S Global Imports defaulted in the Hintons' lawsuit.  So the question of Pekin's duty to defend C&S Global Imports is no longer at issue.

policy. And in Count 13, the Hintons alleged Pekin had committed the tort of negligent and/or intentional misrepresentation. The Hintons asserted that Pekin had represented to The Sportsman's Guide that C&S Global Imports' products were covered under the liability policy. And only after the Hintons sued The Sportsman's Guide did the retailer learn treestands were not covered. Under the Hintons' theory, The Sportsman's Guide would not have marketed C&S Global Imports's treestands, had it known these products were not covered. And both the Hintons and The Sportsman's Guide "have sustained damages as a result of Pekin's misrepresentations to Sportsman's Guide in that Pekin has failed to provide indemnification and/or a defense for [the Hintons'] claims[.]"

¶10. Instead of filing an answer, Pekin filed a motion to dismiss for lack of personal jurisdiction. *See* M.R.C.P. 12(b)(2). Pekin claimed, because it had not entered a contract with a Mississippi resident, had not committed a tort in Mississippi, and did not conduct business in Mississippi, it was not subject to personal jurisdiction under Mississippi's long-arm statute. *See* Miss. Code Ann. § 13-3-57 (Rev. 2012). To support its motion, Pekin attached an affidavit by Tim Manning, one of Pekin's litigation managers.[4]

---

[4] According to Manning, Pekin Insurance Company:

(1)     was incorporated in Illinois;
(2)     has its principal place of business in Illinois;
(3)     is licensed and authorized only to write liability insurance in Arizona, Illinois, Indiana, Iowa, Ohio, and Wisconsin;
(4)     is not incorporated, qualified, or licensed to do business in Mississippi;
(5)     has never been admitted as an insurer in Mississippi;
(6)     has never transacted business or otherwise sold insurance in

5

¶11.    In response, the Hintons argued Pekin was taking an inconsistent position on the jurisdictional question, "contradictorily seek[ing] to be dismissed from this Mississippi court on jurisdictional grounds while simultaneously filing suit against the Hintons on the same matter in Mississippi Federal court."

¶12.    The Hintons also moved to strike Manning's affidavit. They argued the document contained improper legal conclusions—namely, Manning's claim "Pekin has never committed a tort in Mississippi." The circuit court granted the Hintons' motion and struck the affidavit.

¶13.    In the same order, the circuit court denied Pekin's motion to dismiss. The circuit court found Pekin essentially had conceded Mississippi was the proper forum for the coverage

---

   Mississippi;
(7) has no offices or physical facilities in Mississippi; does not possess, own, or lease property in Mississippi;
(8) has no registered agent in Mississippi;
(9) has never had any employees, representatives, agents, officers, or directors in Mississippi;
(10) has no telephone numbers, bank accounts, mailing addresses in Mississippi;
(11) pays no taxes in Mississippi;
(12) has no assets in Mississippi;
(13) does not collect premiums from anyone in Mississippi;
(14) has never committed a tort in Mississippi;
(15) issued, endorsed, and renewed the disputed policy in the State of Illinois to an Illinois company, C&S Global Imports;
(16) performed no transactions related to the disputed policy in Mississippi;
(17) collected all premiums for the disputed policy in Illinois; and
(18) had no expectation "to be hauled into Court in the State of Mississippi" in connection with the disputed policy.

6

dispute when it filed its declaratory action in the Southern District of Mississippi.

¶14. The circuit court also concluded Pekin's actions fell under Mississippi's long-arm statute. Specifically, the court found Pekin had been "doing business" in Mississippi because it "in fact adjusted the [Hintons'] wrongful death claim . . . in Mississippi" and denied coverage to The Sportsman's Guide by letter mailed to The Sportsman's Guide local counsel in Hattiesburg, Mississippi.[5] (The court opined these actions may also "constitute the commission of a tort" in Mississippi.) Further, the circuit court found its exercise of jurisdiction over Pekin neither violated the Due Process Clause nor offended traditional notions of fair play or substantial justice. Because Mississippi was in the "coverage territory" of the C&S Global Imports policy and because Pekin's subsidiary was licensed to sell insurance in Mississippi, Pekin had sufficient minimum contacts with this state. And by filing suit, Pekin has "purposefully availed itself" of the courts in Mississippi.

## V.     Interlocutory Appeal

¶15. This court granted an interlocutory appeal of the circuit court's order. On appeal, Pekin challenges both the grant of the Hintons' motion to strike Manning's affidavit and the

---

[5] The circuit court found it had personal jurisdiction over Pekin "for multiple reasons," including: (1) the "coverage territory" for the C&S Global Imports policy was "the United States of America"; (2) Pekin adjusted Hintons' wrongful-death claim in Mississippi; (3) Pekin possibly committed a tort and/or breach of contract in Mississippi when it denied coverage to The Sportsman's Guide; and (4) Pekin's website uses the group name "Pekin Insurance" to refer not only to Pekin Insurance Company but also the subsidiaries Pekin partly owns, and one subsidiary, Pekin *Life* Insurance Company, is licensed to sell insurance in Mississippi.

7

denial of Pekin's motion to dismiss for lack of personal jurisdiction.

¶16. We focus our review on the motion to dismiss for lack of personal jurisdiction. "Jurisdiction is decided based on the existing facts at the time the action is commenced." *Joshua Props., LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1092 (Miss. 2014) (citation omitted). And here, the fact Pekin filed its own declaratory action in a Mississippi court controls. None of the averments in Manning's affidavit calls this dispositive fact into question. So the issue of whether the circuit court abused its discretion by striking Manning's affidavit has no bearing on the resolution of the jurisdictional question.

## Discussion

¶17. Pekin asserts the circuit court erred as a matter of law when it denied Pekin's motion to dismiss based on lack of personal jurisdiction. Jurisdiction is a question of law, which this court reviews de novo. *Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 975 (Miss. 2004).

¶18. On de novo review, Pekin asks this court to reapply the "two-tier jurisdictional framework" for determining when a court may exercise personal jurisdiction. *Id.* at 976. Under this framework, the court must first ask if, under Mississippi law, the nonresident "defendant is amenable to suit here by virtue of the Mississippi long-arm statute[.]" *Id.* (citing Miss. Code Ann. § 13-3-57). If so, the court must also determine if, under federal law, the nonresident "defendant is amenable to suit in Mississippi consistent with the due process clauses of the federal constitution, and, as well, this state's constitution." *Id.*

8

According to Pekin, it has not engaged in any activities that make it amenable to suit under the long-arm statute. Further, the circuit court's exercise of jurisdiction under the long-arm statute would violate due process.

¶19. But personal jurisdiction is an individual right that can be waived. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S. Ct. 2099, 2105, 72 L. Ed. 2d 492 (1982). And there are a "variety of legal arrangements [that] have been taken to represent express or implied consent to the personal jurisdiction of the court." *Id.* So the long-arm statute is not the only avenue for the circuit court to obtain personal jurisdiction over Pekin in the Hintons' lawsuit. The circuit court may also obtain personal jurisdiction through Pekin's implied consent.

¶20. Under federal precedent, one way to give implied consent is to do exactly what Pekin did—file a lawsuit in the same state over the same insurance policy. *Am. Family Life Assurance Co. of Columbus v. Biles*, Civ. Action No. 3:10CV667TSL-FKB, 2011 WL 4014463, at *2 (S.D. Miss. Sept 8, 2011) (unreported) (citing *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 23 ( 1st Cir. 1991)); *see also Praetorian Specialty Ins. Co. v. Auguillard Constr. Co., Inc.*, 829 F. Supp. 2d 456, 465 (W.D. La. 2010). Persuaded by the federal courts' reasoning, we hold Pekin has impliedly consented to Mississippi's jurisdiction over the Hintons' claims because Pekin had already asked a Mississippi federal court to resolve the very same coverage issues arising from the same policy. This consent creates an *independent* basis for jurisdiction, obviating the need to go

9

through long-arm-statute analysis. *See **Marron v. Whitney Group***, 662 F. Supp. 2d 198, 200 (D. Mass. 2009) (citing ***Interpole***, 940 F.2d at 22).

      **I.**      **"Affirmative Relief Rule"**

¶21.    In ***Interpole***, the United States Court of Appeals for the First Circuit was tasked with reviewing a trial-court ruling similar to the one here. There, a New Hampshire district court found that a cause of action against a nonresident corporation fell within New Hampshire's long-arm statute and did not offend due process. ***Interpole***, 940 F.2d at 22. On appeal, the First Circuit "bypass[ed] this analysis." ***Id.*** The First Circuit concluded the nonresident defendant had "submitted itself to the court's personal jurisdiction" when it filed a second lawsuit in the same New Hampshire district court, "thus making a conventional long arm analysis irrelevant." ***Id.***; *see also **Marron***, 662 F. Supp. 2d at 200.

¶22.    According to the First Circuit, to hold otherwise would create "an unjust asymmetry"—namely, "allowing a party . . . to enjoy the full benefits of access to a state's court [as a] plaintiff, while nonetheless retaining immunity from the court's authority [as a] defendant in respect to claims asserted by the very party it was suing." ***Interpole***, 940 F.2d at 23. Because the nonresident corporation in that case "purposefully availed itself of the benefits and protections of the forum by instituting [the second lawsuit]," the First Circuit found the nonresident corporation had "voluntarily submitted itself to the jurisdiction of the New Hampshire courts for purposes of [the first lawsuit]," which arose out of the same transaction and involved the same parties as the second lawsuit. ***Id.*** at 25.

¶23. Thus, *Interpole* "establish[ed] an affirmative relief rule[.]" ***Dow Chem. Co. v. Calderon***, 422 F.3d 827, 834 (9th Cir. 2005). The Fifth Circuit has summed up the ***Interpole*** rule as follows: "[A] defendant waive[s] its jurisdictional defense by suing the plaintiff in the objectionable forum in a second suit involving the same facts." ***Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc.***, 104 Fed. App'x 376, 380 (5th Cir. 2004); *see also* ***PaineWebber Inc. v. The Chase Manhattan Private Bank***, 260 F.3d 453, 459 n.6 (5th Cir. 2001) (citing ***Interpole*** for "the well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections").

## II. Application

¶24. Pekin gives three reasons why we should not apply the affirmative-relief rule in this case, none of which we find persuasive.

### A. Objectionable Forum

¶25. First, Pekin asserts it has not waived its lack-of-personal-jurisdiction defense because it did not sue the Hintons in Mississippi *state* court, but rather Mississippi *federal* court. But for personal-jurisdiction purposes, this is a distinction without a difference. "In the context of personal jurisdiction, it is settled that the concept of a 'state's courts' includes those federal courts located within the state." *Interpole*, 940 F.2d at 23 n.4 (citing ***Keeton v. Hustler Magazine, Inc.***, 465 U.S. 770, 775-77, 104 S. Ct. 1473, 1478-79, 79 L. Ed. 2d 790 (1984)). This means the United States District Court for Southern District of Mississippi,

11

though federal, is a "Mississippi court" for purposes of personal jurisdiction.[6]

¶26.  Again, "a defendant waive[s] its jurisdictional defense by suing the plaintiff *in the objectionable forum* in a second suit involving the same facts." ***Brokerwood Prods. Int'l***, 104 Fed. App'x at 380 (emphasis added).  "[T]he word 'forum' in a personal jurisdiction analysis . . . refer[s] to *the state* in which a court resides, not simply a particular court." ***Praetorian Specialty Ins.***, 829 F. Supp. 2d at 465 (citing ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 2182-83, 85 L. Ed. 2d 528 (1985); ***McFadin v. Gerber***, 587 F.3d 753, 759 (5th Cir. 2009)).  So here, the objectionable forum is Mississippi, and not Mississippi state courts (as opposed to federal).

¶27.  Though ***Interpole*** involved two suits in the same New Hampshire federal court, subsequent cases have recognized that the affirmative-relief rule is "not limited to the fact that the defendant filed a second lawsuit in the very federal district court where the lawsuit in which it was contesting personal jurisdiction was pending." ***Praetorian Specialty Ins.***, 829 F. Supp. 2d at 465.  Rather, the significance of the second lawsuit in ***Interpole*** lay in the fact it had been filed in a court in the *same state*. ***Id.***; *see also* ***Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.***, 857 F. Supp. 2d 489, 501 (D. Del. 2012) (finding ***Interpole***'s holding was "more expansive" than simply applying to two suits filed in same federal district court).  For example, in ***Praetorian Specialty Ins.***, a Louisiana *federal* court

---

[6] For this reason, Mississippi federal courts apply our state's long-arm statute when determining personal jurisdiction. *E.g.*, ***Walker v. World Ins.***, 289 F. Supp. 2d 786 (S.D. Miss. 2003) (applying Miss. Code Ann. § 13-3-57).

held the nonresident defendant had waived its lack-of-personal-jurisdiction defense by electing to file an action in Louisiana *state* court based on same nucleus of operative facts. ***Praetorian Specialty Ins.***, 829 F. Supp. 2d at 465; *see also* ***Marron***, 662 F. Supp. 2d at 201 (holding a defendant who chose to filed suit in Massachusetts state court based on the same transaction waived his jurisdictional defense in Massachusetts federal court). And in ***Biles***, a Mississippi federal court held the same. ***Biles***, 2011 WL 4014463, at *2.

¶28. In ***Biles***, Texas resident Michael Lockwood had been named as a defendant to AFLAC's complaint to compel arbitration filed in the Southern District of Mississippi. AFLAC sought arbitration to resolve a dispute over who was entitled to the benefits of an AFLAC life insurance policy, which contained an arbitration clause. ***Id.*** at *1. Lockwood responded that he lacked the sufficient contacts with Mississippi for the Mississippi federal court to exercise personal jurisdiction over him. ***Id.*** at *2. But "Lockwood, along with his mother and siblings, ha[d] voluntarily initiated litigation against AFLAC in this forum, *albeit in state court*, alleging he is entitled to benefits under AFLAC's policy and that AFLAC has breached its contract with him." ***Id.*** (emphasis added). Thus, the district court concluded, "by affirmatively suing AFLAC in *this forum* to enforce his claimed right to recover benefits under the AFLAC policy, Lockwood ha[d] effectively consented to suit and/or waived any defense to personal jurisdiction in this suit by AFLAC in this forum to enforce the very same policy's arbitration provision." ***Id.*** (emphasis added) (citing ***Interpole***, 940 F.2d at 23).

¶29. Here, we have the same situation as in ***Biles***, just in reverse. Pekin claims it lacks

13

sufficient contacts with Mississippi for the Jones County Circuit Court to exercise personal jurisdiction over it in the Hintons' lawsuit involving the C&S Global Imports policy. But Pekin, like Lockwood, "voluntarily initiated litigation against [the Hintons] in *this forum*, albeit in [federal] court." *Biles*, 2011 WL 4014463, at \*2.

¶30.    Because Pekin has filed a declaratory action against the Hintons in *the objectionable forum*—i.e., Mississippi—we find Pekin "effectively consented to suit and/or waived any defense to personal jurisdiction" in the Hintons' suit, which was filed in the same forum and concerns the same policy. *Id.*

### B.    Voluntary Submission

¶31.    Next, Pekin argues its Mississippi declaratory action was not "voluntary." Rather, Pekin claims it was "forced" into Mississippi federal court "after the Hintons refused to litigate the coverage action in Illinois."

¶32.    But this is not a case like *PaineWebber, Inc.*, in which the plaintiff had its New York state-court action removed to New York federal court and then, over objection, transferred to Texas federal court. *PaineWebber, Inc.*, 260 F.3d at 459-60. In that case, the Fifth Circuit held *Interpole* did not apply because the plaintiff had not "chosen to commence the action or a related action in the very forum in which it is contesting personal jurisdiction." *Id.* at 460 n.8. Here, though perhaps not its first choice, the decision to file a declaratory action in Mississippi was still Pekin's. The record shows Pekin filed its Mississippi action a month *before* its Illinois action was dismissed and two months before the Hintons amended

14

their complaint to include claims against Pekin. Further, the Illinois court noted it was granting dismissal because Pekin had filed a motion to voluntarily dismiss and did not object to the Hintons' and The Sportsman's Guide's motions to dismiss.

¶33. Regardless of what motivated Pekin to file suit in Mississippi, we cannot permit Pekin to take the inconsistent position that, despite asking a Mississippi federal court to declare what rights and responsibilities it has under the C&S Global Imports policy, it has not submitted itself to Mississippi's jurisdiction over the coverage dispute with the Hintons. *Cf. Interpole*, 940 F.2d at 23-24. Because Pekin concedes it sued the Hintons in Mississippi to resolve the coverage dispute, we find it has submitted itself voluntarily to Mississippi's jurisdiction on that and related issues.

### C.     *Irrelevance of Long-Arm Statute*

¶34. Still, Pekin insists the circuit court erred when it relied on Pekin's declaratory action to find jurisdiction because filing a lawsuit in Mississippi does not fit any category of activities listed in Mississippi's long-arm statute. But under *Interpole*'s affirmative-relief rule, our long-arm statute is "irrelevant." *Interpole*, 940 F.2d at 22. Pekin's implied consent created an *independent basis* for jurisdiction. *See Marron*, 662 F. Supp. 2d at 200 (citing *Interpole*, 940 F.2d at 22) ("Consent provides a basis for jurisdiction that exists independently of statutory rules and, therefore, the court may bypass traditional jurisdictional analysis under the long-arm statute where, as here, the defendant has voluntarily submitted himself to the jurisdiction of the forum state."). In other words, Pekin's act of filing suit in

15

Mississippi federal court does not have to fall under one of the three categories of the long-arm statute, because the circuit court's exercise of jurisdiction does not arise from that statute. Rather, jurisdiction results from Pekin waiving any jurisdictional defense it otherwise may have had when it asked a Mississippi court to enforce the very same policy over which Pekin now claims Mississippi courts have no jurisdiction. *Biles*, 2011 WL 4014463, at *2.

¶35. We emphasize Pekin's implied consent—in contrast to activities that fall under the long-arm statute—does not subject Pekin to the jurisdiction of Mississippi courts generally. Rather, Pekin's consent applies *only* to claims involving the same parties and the same policy as its federal declaratory action.[7] *Id.* But both the Hintons' claims against Pekin involve the same policy and coverage dispute. Their declaratory action (Count 12) is the *exact same claim* Pekin brought in its federal declaratory action. And their tort claim (Count 13) is based on Pekin's alleged misrepresentation to The Sportsman's Guide that C&S Global Import's liability policy covered treestands. So Pekin waived its lack-of-personal-jurisdiction defense to both claims.

---

[7] In *Interpole*, the First Circuit found personal jurisdiction because the two lawsuits involved the "same transaction"—the unsuccessful transportation of wooden utility poles. *Interpole*, 940 F.2d at 23. In *Praetorian*, the Louisiana district court found personal jurisdiction because the two lawsuits "arose for the [same] nucleus of operative facts"—a car accident and the ensuing insurance-coverage dispute. *Praetorian*, 829 F. Supp. 2d at 465. And in *Biles*, the Mississippi district court found personal jurisdiction in the federal lawsuit because Lockwood's state lawsuit had involved "the very same policy[]." *Biles*, 2011 WL 4014463, at *2.

16

**Conclusion**

¶36.    The circuit court partly based its decision to deny Pekin's motion to dismiss on Pekin's "willingness to litigate [the insurance-coverage issues] in Mississippi by electing to file in Mississippi Federal Court." In other words, the circuit court did not allow Pekin to take the inconsistent position that Mississippi was an acceptable forum for Pekin as a plaintiff in the coverage dispute with The Sportsman's Guide and the Hintons, but not as a defendant. Nor do we. Because Pekin sued the Hintons and The Sportsman's Guide in Mississippi over the same coverage dispute, we hold Pekin waived its defense of lack of personal jurisdiction in this suit. We affirm the circuit court's order denying Pekin's motion to dismiss. And we remand this case to the circuit court for further proceedings consistent with this opinion.

¶37.    **AFFIRMED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KING, COLEMAN AND BEAM, JJ., CONCUR. DICKINSON, P.J., AND KITCHENS, J., NOT PARTICIPATING.**