# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00383-SCT

*MARSHA R. HINTON AND THOMAS F. HINTON*

*v.*

*PEKIN INSURANCE COMPANY*

DATE OF JUDGMENT:                02/09/2018
TRIAL JUDGE:                     HON. DAL WILLIAMSON
TRIAL COURT ATTORNEYS:           LAWRENCE E. ABERNATHY, III
                                 SAMUEL S. McHARD
                                 DORRANCE AULTMAN
                                 RICHARD M. BURGLAND
                                 MARK D. MORRISON
                                 MATTHEW D. MILLER
                                 ANN GRIFFIN
COURT FROM WHICH APPEALED:       JONES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:        LAWRENCE E. ABERNATHY, III
                                 LESLIE D. ROUSSELL
                                 SAMUEL S. McHARD
ATTORNEY FOR APPELLEE:           DORRANCE AULTMAN
NATURE OF THE CASE:              CIVIL - WRONGFUL DEATH
DISPOSITION:                     AFFIRMED - 02/21/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Timothy Hinton died from injuries sustained in a fall from a tree stand. Timothy's parents, Marsha and Thomas Hinton (the "Hintons"), brought a wrongful-death suit against the manufacturer of the tree stand, C&S Global Imports, Inc. ("C&S"), and against Pekin Insurance Company ("Pekin").

¶2.    After filing their third amended complaint, the Hintons filed a motion for partial summary judgment against Pekin. The Hintons claimed that Pekin waived its defenses to coverage or should be estopped from asserting any coverage defenses. Among other arguments, the Hintons maintained that Pekin failed to defend C&S, did not file a declaratory-judgment action and allowed a default judgment against C&S. The Jones County Circuit Court denied the Hintons' motion.

¶3.    Pekin then moved for summary judgment. It argued that the insurance policy excluded coverage for tree or deer stands and related equipment. The circuit court granted Pekin's motion and entered a final judgment dismissing Pekin from the suit.

¶4.    The Hintons now appeal both of the circuit court's rulings.[1] After review, we affirm the order denying partial summary judgment to the Hintons, the order granting summary judgment to Pekin and the final judgment dismissing Pekin from the suit.

## FACTS AND PROCEDURAL HISTORY

### *Background*

¶5.    Timothy Hinton died on November 18, 2012. At the time of his fall, Timothy was wearing a fall-arrest system which included a full-body harness, tether and tree strap. Timothy had purchased the tree stand and fall-arrest system from The Sportsman's Guide, Inc. ("TSG"), in 2009. C&S had manufactured the items and marketed them to TSG. Pekin insured C&S at the time of Timothy's injury and death.

---

[1] The litigation is before the Court for the second time. *See Pekin Ins. Co. v. Hinton*, 192 So. 3d 966 (Miss. 2016). On interlocutory appeal, the Court determined that Pekin, an Illinois company, was subject to personal jurisdiction in Mississippi. *Id.* at 974. The Court provided a detailed account of the early procedural history of this case. *Id.*

*The Initial Insurance Policy*

¶6.     In January 2011, C&S applied for insurance with Pekin.  Comprehensive Insurance Services, Inc. ("Comprehensive"), an insurance agency, delivered the commercial insurance application to Pekin.  On the application, the box entitled "REMARKS/PROCESSING INSTRUCTIONS" read:

> POLICY EXCLUSION: THIS POLICY SHALL NOT IN ANY WAY EXTENT [sic] COVERAGE TO DEER/TREE STANDS OR ANY RELATED EQUIPMENT.

In the box entitled "LOSS HISTORY," the application referenced an "INJURY FROM USE OF TREE STAND" in 2010.

¶7.     Based on the application, Pekin issued Businessowners Policy No. 00BU51626-O to C&S for the policy period of January 31, 2011, to January 31, 2012.  In the policy, the "Businessowners Form Schedule" listed the "Forms And Endorsements Attached To This Policy."  Among these thirty-two entries, the contested exclusion in this appeal was listed: "481T 1078 Amendment of Policy" (the "481T").  The 481T was attached to the policy as the second endorsement.  In its entirety, it provided:

00-BU51626-0

AMENDMENT OF POLICY

This endorsement. [sic] effective 01/31/11

forms a part of policy No. 00BU51626-0

Issued to C & S Global Imports INC

by            PEKIN INSURANCE COMPANY

3

It is agreed that as of the effective date of this endorsement this policy is amended in the following particulars:

EXCLUSION DESIGNATED PRODUCTS

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
SCHEDULE DESIGNATED PRODUCT(S)
DEER/TREE STANDS & RELATED EQUIPMENT

481T (10-78)

HOME OFFICE

¶8.     During the course of the litigation, the Hintons deposed Jeff Cole, the president and chief executive officer of C&S. Cole testified that C&S had stopped selling tree stands and sought an insurance policy with a lower premium that did not insure tree stands. According to Cole, C&S had been insured with First Specialty Insurance, but C&S switched to Pekin and stopped selling tree stands. Cole testified that "when I had insurance with Pekin Insurance, it was not to cover tree stands." He further testified that he "understood" that tree stands were excluded from coverage when C&S switched coverage from First Specialty Insurance to Pekin.

¶9.     The Hintons also deposed Jeffery Ott, an agent at Comprehensive. Ott testified that when Cole first approached him for an insurance policy for C&S in 2010, he had to bring in another broker on a referral basis in order to insure the tree stands as a specialty item with First Specialty Insurance. According to Ott, C&S's high premium payments to cover the tree stands was a problem financially for C&S, and Cole approached Ott again to seek a policy that did not cover tree stands. Ott contacted Pekin and set up the policy for C&S. Also, Ott

4

maintained that Cole never asked him to remove the 481T from the Pekin policy.

*The Renewal Insurance Policy*

¶10.    Pekin renewed the businessowners policy for C&S under Policy No. 00BU51626-A for the policy period January 31, 2012, to January 31, 2013.  The "BUSINESSOWNERS FORM SCHEDULE" of the renewal policy listed "481T 107 Amendment of Policy" among thirty-three[2] entries.  Aside from an updated policy number, the language of the 481T exclusion, which is the second attached endorsement to the renewal policy, is identical to the 481T exclusion in the initial policy.

*The Amending Insurance Policy*

¶11.    Pekin issued an amending policy for the policy period of July 8, 2012, to January 1, 2013, under Policy No. 00BU51626-A.  The amending policy was eleven pages long and reflected an additional premium of $28 on the common declarations page.  On the bottom of the same page, the amending policy read:

Changes Made to Your Policy:

Forms Added

The "BUSINESSOWNERS FORM SCHEDULE" of the amending policy listed "481T 1078 Amendment of Policy" among thirty-four entries of forms and endorsements "Attached To This Policy."  Only two endorsements were actually attached to the amending policy: a disclosure concerning terrorism insurance and an amendment to the policy that named an

---

[2] The number of listed forms and endorsements went from thirty-two in the initial policy to thirty-three in the renewal policy because of a new endorsement included in the renewal policy: "ILLINOIS CHANGES — CIVIL UNION."

additional insured.  The additional-insured amendment read, in part:

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

SCHEDULE

Name of person or Organization (Additional Insured)
  SCHEELS ALL SPORTS INC
  SCHEELS CORPORATION OFFICE

### The Filing of the Wrongful-Death Suit

¶12.    The Hintons filed the wrongful-death suit on behalf of their son in late 2013.  The suit was filed in Jones County Circuit Court.

### Pekin's Claim Review

¶13.    Several documents, emails and letters in the record pertain to Pekin's review of the Hintons' claim against C&S.  They are summarized below:

| | |
|---|---|
| Feb. 5, 2014 | In a letter, TSG demanded indemnity and defense from C&S and Hunter's View, Ltd., a related company to C&S. |
| Feb. 10 | Comprehensive submitted a Notice of Claim to Pekin. |
| Feb. 11 | An email assigned the claim review to Tim Manning, Pekin's litigation manager. |

6

Feb. 11    Mark Morgan, Pekin's Regional Claim Manager, emailed Manning and other Pekin employees. The first email read, "Randy, I am in the process of correcting the opener for this new claim/new suit, but wanted to make you aware of this as soon as possible as well." The second email read:

> It turns out this cannot be corrected, rather it will be necessary to do a Create claim to get this opened, as the policy did not include liability coverage at the time of termination, but did at the time of loss. As such, we will leave this claim pending in the opener screens even though it shows "error". [sic] We will delete this claim once the create is in plain, so we will still have something for tracking purposes.

Feb. 11    A typed note appeared on a claim coverage document: "Policy in force on date of loss." On the document in the "ENDORSEMENTS" section, "481 1078" was listed, but the document did not specify which 481 endorsement.[3]

Undated    A typed note appeared at the bottom of the Businessowner's Underwriter Instruction Sheet: "481T not marked here."

Feb. 13    A typed note appeared on a copy of the 481T:

> ON 1/23/13. AGENT SENT PEKIN A CANCELL [sic] REQUEST - STATING INSURED WAS GOING OUT OF BUSINESS. I DO NOT SEE THIS AMENDMENT OF POLICY CHANGE REQUEST IN THE UNDERWRITING FILE?? TM 02/13/2014

Feb. 14    Attorney Dorrance Aultman, who was retained by Peking to represent C&S upon notice of the Hintons' claim, emailed Manning and told him that he had contacted the clerk's office in Laurel, Mississippi and "discovered that there is no process" filed for C&S.

---

[3] Pekin used variations of the 481 endorsement throughout its policies. A 481T amended the actual policy manuscript; a 481N added an additional insured to the policy.

Feb. 15    A typed note attached to a Common Declarations document read,

> From underwriting file
> There is no 481T-Amendment to policy in the ImageRight file. That endorsement excludes tree stands.
>
> Tim Manning
> 02/15/2014.

Feb. 15    Manning emailed Aultman and informed him of a "[n]ew development" that the policy was written with a 481T endorsement that excluded coverage for tree stands and related equipment.

Feb. 15    Manning emailed Cole. The email stated, "This confirms our telephone conversation earlier today." Manning informed Cole of the claim and states:

> ". . . the Pekin Policy was written with endorsement 481T (1078) . . . which excludes policy coverage for deer/tree stands or any related equipment. In the absence of coverage, the policy has obligation to provide neither a defense nor indemnity to it's [sic] policyholder, C&S Global Imports, Inc. . . . Upon notice of claim, Pekin under reservation of rights, pre-emptively [sic] assigned a defense attorney to act in your best interest. . . . Attorney Aultman has already begun working to defend C&S Global Imports, Inc. Even though we have no duty to provide for your defense and/or indemnity, in order to give you ample time to align defense for this claim, we have requested he continue the defense, and Pekin has agreed to continue to fund the defense, thru next week, or thru Friday, February 21, 2014 . . . . After that time, Pekin will fund no part of this claim. . . . In summary, there is no policy coverage for this claim, and Pekin has no duty to defend and/or indemnify it's [sic] policyholder, but agrees to continue to fund the defense for a short time, to allow you to align your own defense.

Feb. 17    Aultman emailed Cole. He stated that "Manning has advised me of the coverage situation with Pekin Insurance." He informed Cole that he would share his file with whichever attorney C&S chose to continue the representation.

8

| Feb. 18 | Manning sent Cole a policy release, but Cole never signed or returned it. |
| Feb. 18 | Manning mailed Cole a letter that was virtually identical to his email to Cole on February 15. |

### *Procedural History of the Wrongful-Death Suit*

¶14.    The Hintons served C&S in December of 2013 and filed an application for default on April 2, 2014.  The clerk entered a notice of default the next day.

¶15.    On June 9, 2016, the Hintons filed their third amended complaint, which sought recovery against C&S, Hunter's View, Ltd., TSG, Pekin, John Doe corporations and individual John Does.[4]  In all, the Hintons brought fourteen counts against the defendants. The majority of the claims sought recovery under theories of negligence, breach of warranty, products liability or *res ipsa loquitor*.  In essence, the Hintons alleged that the tree strap in the fall-arrest system was negligently manufactured or defective.  Count twelve sought to have the circuit court adjudicate Pekin's liability and responsibilities to C&S and TSG under C&S's insurance policy with Pekin.  Also, count thirteen sought recovery against Pekin for negligent or intentional misrepresentation, and count fourteen alleged civil conspiracy against Pekin; the circuit court dismissed counts thirteen and fourteen pursuant to a motion to dismiss by Pekin.

¶16.    Pekin answered the Hintons' complaint.  For the first time in the litigation, C&S answered the complaint and moved to set the entry of default aside.  The circuit court denied the motion and entered a default judgment against C&S on October 20, 2016.

_____

[4] The Court has reviewed the intervening procedural history of this case from the entry of the notice of default until just before the filing of the third amended complaint. *See* **Pekin**, 192 So. 3d at 967–70.

9

¶17. Following the entry of default judgment, the Hintons moved for partial summary judgment. They maintained that Pekin waived any defense to coverage or was equitably estopped from asserting any coverage defenses because Pekin (1) failed to provide a defense to C&S, (2) failed to obtain a judicial determination that it did not owe C&S a defense and (3) failed to protect C&S from a default judgment. The circuit court denied the Hintons' motion. The Hintons sought interlocutory appeal in this Court, but this Court denied their petition.

¶18. Pekin then moved in the circuit court for summary judgment on count twelve of the third amended complaint (the declaratory judgment against Pekin). Pekin maintained (1) that the contested insurance policy did not cover Timothy's injuries due to an exclusion for tree stands and related equipment and (2) that TSG was not an additional insured under the policy. The circuit court granted Pekin's motion and dismissed Pekin with prejudice in a final judgment under Mississippi Rule of Civil Procedure 54(b).

¶19. Aggrieved, the Hintons appealed both the denial of their motion for partial summary judgment and the grant of Pekin's motion. They raise several issues which we reframe on appeal. They maintain that the circuit court erred by not applying the doctrines of equitable estoppel, waiver and judicial estoppel. They also argue that the circuit court erred in its determination that no genuine issue of material fact existed as to (1) whether the policy included the tree-stand exclusion and (2) whether TSG was an additional insured under the policy.

¶20. We address the circuit court's grant of summary judgment to Pekin first. Our analysis

10

of the insurance policy's language shapes our subsequent review of the circuit court's denial of the Hintons' motion for partial summary judgment. The parties briefed the contested issues under Illinois and Mississippi law. We find no conflict of laws between the laws of either forum and will apply Mississippi law to both issues.

## STANDARD OF REVIEW

¶21. Our standard of review for a motion for summary judgment is well established:

> We review a trial court's grant of summary judgment de novo. ***Mitchell v. Ridgewood E. Apartments, LLC***, 205 So. 3d 1069, 1073 (Miss. 2016) (citing ***Borries v. Grand Casino, Inc.*** [,] 187 So. 3d 1042, 1045 (Miss. 2016)). Under Rule 56 of the Mississippi Rules of Civil Procedure, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The burden of demonstrating that no genuine issue of fact exists is on the moving party and "the non-moving party should be given the benefit of every reasonable doubt." ***Borries***, 187 So. 3d at 1046. "The evidence is to be viewed in the light most favorable to the nonmoving party." ***Mitchell***, 205 So. 3d at 1073 (citing ***Stribling Inv., LLC v. Mike Rozier Constr. Co., Inc.***, 189 So. 3d 1216, 1219 (Miss. 2016)).

***Daniels v. Crocker***, 235 So. 3d 1, 6 (Miss. 2017). The nonmovant, though, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

## ANALYSIS

### I. Pekin's Motion for Summary Judgment

¶22. In a thirty-one-page order, the circuit court granted Pekin's motion for summary judgment and dismissed Pekin from the suit with prejudice. Pekin had argued that the policy

11

language did not provide coverage for Timothy's injuries and that TSG was not an additional insured under the policy. The Hintons responded that genuine issues of fact existed as to whether the 481T exclusion was created after Timothy's injury or whether the 481T was not included in the policy after the issuance of the amending policy in 2012. They also claimed the existence of genuine issues of material fact about TSG's status as an additional insured under the policy.

### A. The 481T Exclusion

¶23. Pekin alleges that the policy did not provide coverage pursuant to the 481T, which excluded coverage of tree stands and related equipment under the policy. It bears the initial burden under Rule 56(c) to demonstrate that no genuine issue of material fact exists. M.R.C.P. 56(c).

¶24. The Court proceeds under a de novo standard of review for any interpretation of an insurance policy. *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 967 (Miss. 2014). This is because "[t]he interpretation of an insurance policy is a question of law, not one of fact." *Id.*

¶25. Pekin met its burden to demonstrate that no genuine issue of material fact existed as to whether the 481T excluded coverage for tree stands and related equipment. The initial policy and renewal policy both list the 481T. The exclusion is also attached to both policies. In addition, the amending policy references the 481T exclusion. Further, Cole testified that C&S sought a cheaper policy that did not provide coverage for tree stands. Ott also testified that Cole, on behalf of C&S, requested a policy with no coverage for tree stands and related

12

equipment.

¶26. On appeal, no party contests that the 481T exclusion is unambiguous. It lists that the endorsement is effective upon the date referenced and includes the appropriate policy number. It mentions the parts of the policy that are amended and excludes tree or deer stands and related products from policy coverage.

¶27. The Hintons argue that Morgan's email—alone—is enough evidence to demonstrate a genuine issue of material fact. Morgan had emailed Manning about a technical issue within Pekin's claims-processing system in opening the Hintons' claim under the policy. In that email, Morgan stated, "it will be necessary to do a Create claim to get this opened, as the policy did not include liability coverage at the time of termination, but did at the time of loss." While there may be a genuine issue as to the interpretation of Morgan's opinion on policy coverage, Morgan's opinion is not a material issue in this case because "[t]he interpretation of an insurance policy is a question of law" in Mississippi. *Minn. Life Ins. Co.*, 164 So. 3d at 967. In other words, Morgan's opinion on coverage is not relevant to the resolution of the issue and, therefore, does not create a fact issue for the jury.

¶28. No party contests the meaning of the 481T, and Pekin showed that the policy included the exclusion from its first issuance. Thus, for the purposes of the initial Rule 56 burden, Pekin demonstrated that no genuine issue of material fact exists as to whether the 481T exclusion exempted tree stands and related equipment from coverage.

¶29. As such the burden shifts to the Hintons to demonstrate that a triable issue remains for the jury. The Hintons maintain that

13

This case involves an insurance company that appears to have created an exclusion after the accident at issue or deleted an exclusion from its policy when it added an additional insured. It has always been the position of the Hintons that the 481T exclusion was not a part of the Pekin policy at the time of Tim Hinton's fall. The Hintons do not know whether the exclusion was created after the fall or whether the exclusion was not included in the policy when it was amended in July of 2012.

These two propositions sum up the Hintons' contention that an issue of fact for the jury to resolve remains: (1) whether the exclusion was not included in the amending policy or (2) whether the exclusion was created and inserted after Hinton's injury.

   1. *Whether the 481T exclusion was not included in the policy when it was amended in July 2012.*

¶30. The Hintons failed to demonstrate a fact issue for the jury on this point. The amending policy amended the renewal policy. It was not an "amended policy" in and of itself. It was an "amending policy." This is evident from the fact that the amending policy had the same policy number as the renewal policy—Policy No. 00BU51626-A. The policy also stated that forms were added to the policy; it did not state that any forms were not included or that any forms were removed from the policy. In addition, the amending policy was only eleven pages long—significantly shorter than the initial policy at 106 pages and the renewal policy at 107 pages.

¶31. Further, no evidence appears in the record that the 481T was not included in amending policy. The amending policy listed the 481T as attached to the policy in the businessowners form schedule. While the 481T was not actually attached to the amending policy, neither were thirty-one of the other forms and endorsements from the renewal policy. These thirty-

14

one other forms, though, were still part of the insurance policy after the amending policy was issued. The only forms actually attached to the amending policy were an additional insured and a notice of the rejection of terrorism insurance. If these two forms were the only valid forms under the amending policy simply because they were actually attached to the amending policy, then the amending policy would not have offered any coverage at all. For there to be any coverage under the amending policy, the amending policy simply amended the renewal policy and did not stand on its own as a separate policy.

¶32.    Besides the evidence that the amending policy amended the renewal policy and still included the 481T exclusion, the initial insurance application indicated that the policy would not cover deer or tree stands and related equipment. Further, Cole testified that he wanted a policy that did not insure tree stands, because the policy would be cheaper. He also testified that he never instructed Ott to remove the exclusion from the policy. Ott supported this testimony. He claimed that Cole approached him about switching to an insurance policy that did not cover tree stands. He testified that he secured the Pekin policy for that purpose and never instructed anyone to take the exclusion out of the policy.

¶33.    The Hintons point to several pieces of evidence in the record as proof of a genuine issue that the 481T exclusion was not included in the amending policy. They maintain that Morgan's email is some evidence that the exclusion was not in the amending policy. Viewing Morgan's email in the light most favorable to the Hintons, the email expresses Morgan's opinion that there was "liability coverage . . . at the time of loss." It does not address the relevant issue of whether the exclusion was not included in the policy as a result

15

of its not being attached to the amending policy or its being somehow removed from the policy. *See Minn. Life Ins. Co.*, 164 So. 3d at 967 ("The interpretation of an insurance policy is a question of law, not one of fact.").

¶34. The Hintons also argue that several documents create a fact issue for the jury. Manning wrote that he did not see the 481T in the underwriting file and that there was no 481T in the ImageRight file. Neither of these statements support the Hintons' claim that the 481T was not included in the policy after the 2012 amendment. There is no genuine issue of material fact for the jury to resolve simply because Manning did not see the 481T in the underwriting file. The underwriting file does not control the language of the actual policy. Pekin demonstrated that the 481T was part of the policy from its inception. *See Noxubee Cty. Sch. Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004) ("Insurance policies are contracts, and as such, they are to be enforced according to their provisions."). Further, Manning's not seeing the 481T in the underwriting file or the 481T's absence from the ImageRight file does not support the argument that the 481T was not included in the policy itself.

¶35. The same goes for the underwriting documents that either did not have the 481T listed or did not have the 481T marked. Looking at this evidence in the light most favorable to the Hintons does not change the fact that no evidence supports the claim that the 481T was not included in the policy after the amendment.

¶36. The Hintons did not provide any evidence of a genuine issue of *material* fact as to whether the 481T was left out of the policy or removed from the policy after the 2012

amendment. The fact that the 481T was not marked in certain portions of the underwriting file and that a claims adjuster did not see the 481T during his review of the file is not sufficient evidence to defeat the award of summary judgment in Pekin's favor. While the evidence alone is insufficient to create a fact issue for the jury, its insufficiency is more blatant in the context of this record. Here, the initial application for insurance stated that the policy would not cover tree stands; the 481T was consistently listed and attached to the policies; Cole testified that he did not want coverage for tree stands; and Ott testified to the same effect. The Hintons have not met their burden to defeat summary judgment on this issue.

> 2. *Whether the 481T exclusion was created and inserted into the policy after Timothy's fall.*

¶37. The Hintons have not demonstrated an issue of fact for the jury on this issue either. In this more than fifteen-hundred-page record, no evidence appears that the 481T exclusion was created and inserted into the policy after Timothy's fall.

¶38. The Hintons argue that Manning was an experienced claims adjuster and would not have missed the 481T during his review of the file had it been in the file. From this argument, the Hintons want us to conclude that the 481T must have either been removed from the policy or created after Timothy's fall and inserted into the policy. This argument is simply unsupported.

¶39. To show that the 481T was created after Timothy's fall, the Hintons point to a coverage document in a separate but similar claim to their claim. The coverage document

17

generated by Pekin for the separate claim is a document similar to the claim-coverage document generated on February 11, 2014, for the Hintons' claim. On the coverage document in the separate claim, "481 1078" is listed but is struck through with a red line. Above the "ENDORSEMENTS" section, in blue type, ten endorsements are listed, including two 481 endorsements—a "481N 1078" and a "481T 1078." The Hintons maintain that because this claim document had "481 1078" marked through and "481T 1078" listed above the endorsements section, a genuine issue of material fact existed as to whether Pekin had created the 481T endorsement—in the Hintons' claim—and had inserted it into C&S's policy after Timothy's fall. This is an unsupported leap in logic. The only evidence presented about this separate claim is the coverage document itself. The Hintons offer no evidence of fraud or deception by Pekin. In fact, no explanation appears at all for the marked-through portion of the document, and the Hintons offer no evidentiary support that Pekin did *anything* wrong in this separate claim. Further, the claim-coverage document in the Hintons' claim does not have any marked-through portions or any added "481 1078" endorsements.

¶40. In contrast to the Hintons' lack of proof that the 481T was created after the fact, an overwhelming amount of evidence exists that the 481T exclusion was written into both the initial policy and the renewal policy and that it was referenced in the amending policy. Cole's testimony is uncontradicted that C&S sought an insurance policy that would not cover tree stands because C&S was no longer selling tree stands. Ott's testimony supported the proposition that the 481T exclusion was included in the original policy. Ott testified that initially he had been forced to associate another broker in order to secure a specialty policy

18

to cover the tree stands but that he found the Pekin policy on his own as it did not cover the tree stands. In addition to this testimony, the insurance application also had provided that the policy would not cover tree stands and related equipment. The Hintons simply have not presented any evidence that the 481T endorsement was created by Pekin after Timothy's fall and inserted into C&S's policy.

¶41. Thus, in sum, Pekin prevailed in its summary-judgment motion and demonstrated that no genuine issue of material fact existed as to whether the policy covered the loss due to the tree stand. The policy did not. In response, the Hintons failed to show a genuine issue of material fact.

### B. TSG as an Additional Insured

¶42. After granting summary judgment to Pekin under the policy, the circuit court found that "the issue of whether The Sportsman's Guide is an additional insured under the Pekin policies is now a moot issue as between the Plaintiffs and Pekin Insurance Company." We agree and refrain from rendering an advisory opinion on the issue. *See **Hughes v. Hosemann***, 68 So. 3d 1260, 1263 (Miss. 2011) ("It is not within the province of this Court to render advisory opinions.").

### II. The Hintons' Motion for Partial Summary Judgment

¶43. We now turn to the Hintons' raised errors concerning the denial of their motion for partial summary judgment. Our analysis of this issue is framed within the context of the language of the policy discussed above. No genuine issue of material fact exists as to whether the policy provided coverage for tree stands and related equipment. It did not. With

19

this resolved, it becomes clear that the circuit court correctly denied the Hintons' motion for partial summary judgment.

### A. Estoppel

¶44. The Hintons argue that the circuit erred by not granting its motion on the basis of estoppel. They argue that Pekin's failure to provide a defense to C&S or to obtain a judicial determination that it did not owe a defense should estop Pekin from raising any coverage defenses.

¶45. "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. However, no duty to defend arises when the claims fall outside the policy's coverage." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006). "Unquestionably, the insurance carrier has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in [the]event a judgment is rendered against the insured." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996). Within this context, "an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured." *S. Farm Bureau Cas. Ins. Co. v. Logan*, 238 Miss. 580, 590, 119 So. 2d 268, 272 (1960).

¶46. Here, the Hintons argue that Pekin assumed coverage of C&S's defense only to abandon C&S eight days later. They further argue that this action resulted in prejudice to

20

C&S as an entry of default was noticed against C&S on April 2, 2014.

¶47. The Hintons, though, failed to demonstrate a genuine issue of material fact on this issue. Pekin did retain an attorney to investigate the claims on behalf of its insured, C&S three to four days after Pekin received notice of the claim. Pekin denied coverage to C&S in an email from Manning on February 15 and a letter on February 18. Manning wrote C&S, "the Pekin Policy was written with endorsement 481T (1078) . . . which excludes coverage for deer/tree stands or any related equipment. In the absence of coverage, the policy has obligation to provide neither a defense nor indemnity to it's [sic] policyholder, C&S Global Imports, Inc." Manning's email to C&S stated that Pekin would continue to fund C&S's defense through February 21 so that C&S could properly align its defense. Thus, Pekin denied coverage to C&S under the policy and defined the scope of the remaining representation.

¶48. Because Manning's email stated that Pekin retained an attorney for C&S "under reservation of rights," the Hintons maintain that Pekin assumed the defense of C&S's claim. The full context of Manning's email, though, shows that Pekin assigned an attorney "under reservation of rights" as soon as it received notice of the claims against C&S. Five days later, Pekin denied coverage to C&S. We find that an insurance company should not be estopped from raising coverage defenses when it assigns its insured an attorney upon receipt of a notice of claim, investigates the claim and promptly denies coverage.

¶49. The Hintons' reliance on *Maryland Casualty Company v. Nestle* is misplaced. *Md. Cas. Co. v. Nestle*, 2010 WL 3735756, at *1 (S.D. Miss. Sept. 17, 2010). There, the insurer

21

defended its insured for two years under a potentially defective reservation-of-rights letter. *Id.* at *2. The insurer then brought a declaratory-judgment action against its insured and sought to deny coverage. *Id.* The district court denied the insurer's motion for summary judgment, since a genuine issue of material fact existed as to whether the reservation-of-rights letter was effective, and it was too early to tell whether the insured was prejudiced. *Id.* at *6–7. Pekin, though, denied coverage promptly. Even if we were to find that Pekin had assumed C&S's defense by assigning it an attorney, it quickly withdrew, leaving forty-one days until the entry of default. Thus, *Nestle* does not establish that a genuine issue of material fact existed in this case.

¶50. Further, *Logan* is factually distinguishable. *Logan*, 119 So. 2d at 268. In *Logan*, the insurer had been negotiating a settlement on behalf of its insured. *Id.* at 269–70. When the settlement negotiations fell through, the insurer notified its insured of its withdrawal from the matter and its denial of coverage under the policy. *Id.* at 270. The same day, a default judgment was entered against the insured. *Id.* On appeal, the Court estopped the insured from raising coverage defenses. *Id.* at 269–72. Here, though, Pekin denied coverage to C&S on February 15. The entry of default was not entered until April 2—forty-seven days later. It is undisputed that C&S did nothing in the interim to defend itself or to prevent the default. *Logan*, though, required C&S to act: "[I]n a case of estoppel for untimely withdrawal or damages resulting from the injustified [sic] refusal to defend, in either case the insured must act in good faith and do what is reasonably required under the circumstances to diminish the damages." *Id.* at 272.

22

¶51. Also, we focus our analysis on the actions of C&S as the insured, not what the Hintons would have done had they been in C&S's position. While the Hintons have standing to bring C&S's legal claims against Pekin in order to establish coverage, they are still bound by the actions of C&S. *See Titan Indem. Co. v. Williams*, 743 So. 2d 1020, 1022–23 (Miss. Ct. App. 1999). Again, C&S did nothing to avoid the entry of default between the denial of coverage and April 2. In fact, Cole never executed the release sent to C&S by Pekin, and the record reveals that the parties struggled during the litigation to locate and depose Cole. Cole testified that he had only appeared at a later hearing in the case to "get my head out of the sand and try to get this stuff resolved."

¶52. Last, the Hintons maintain that the circuit court erred in denying their motion for partial summary judgment since Pekin's counsel admitted in a hearing that Manning's letter was not a proper reservation-of-rights letter. This argument is without merit. While Pekin's counsel did state that the email and letter were not proper reservations-of-rights letters, he claimed that this was because Pekin denied coverage. Pekin's counsel stated:

> Now, when Tim Manning reached out to Jeff Cole in February of 2014, was that up to speed and up to snuff as far as the reservation of rights letter goes? No. But what he did during that communication, unlike all of these other cases that you'll look at, especially the *Nestle* one, is that he said there's no coverage and we're only providing you with a defense for six days after which point in time you're on your own.

¶53. The Hintons failed to meet their burden in seeking partial summary judgment against Pekin. Pekin denied coverage to C&S and withdrew any representation without prejudice to its insured. Thus the circuit court did not err in denying partial summary judgment to the Hintons on this issue.

23

### B. Waiver

¶54. Under three separate headings in their brief, the Hintons argue that the circuit court erred by not granting summary judgment against Pekin under a theory of waiver. The essence of their argument is that Pekin waived its coverage defenses by failing either to defend the suit under a reservation of rights or to seek a declaratory judgment that it owed no duty to defend C&S. The Hintons offer a number of different theories in support of these claims. In the end, though, the Hintons' arguments are without merit, given the resolution of the first issue (the policy included the 481T) and the fact that Pekin denied coverage to C&S.

¶55. "Waiver is defined as 'an intentional relinquishment or abandonment of a known right or privilege.'" *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 68 (Miss. 2004) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938)). "Moreover, the fact of waiver typically must be proved by clear and convincing evidence." *Moorman v. Tower Mgmt. Co.*, 451 F. Supp. 2d 846, 853 (S.D. Miss. 2006) (citing *Swift v. Aberdeen Lumber Co.*, 172 Miss. 697, 159 So. 301, 305 (Miss.1935)).

¶56. In short, the Hintons did not meet their burden to demonstrate that no genuine issue of material fact existed as to whether Pekin waived its coverage defenses. No evidence appears in the record that Pekin waived its right to assert coverage defenses. Instead, it denied coverage to C&S.

¶57. Without showing a conflict of laws between Illinois and Mississippi law, the Hintons rely on *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122,

24

1134 (1999). They argue that under **Ehlco**, Pekin was required either to defend C&S under a reservation of rights or to seek a declaratory judgment. While the Hintons cite a number of Illinois decisions, distinguishing and explaining the **Ehlco** court's analysis is sufficient to address the Hintons' waiver arguments.

¶58. The **Ehlco** court's analysis does not support either the Hintons' waiver or estoppel arguments:

> The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps *and is later found to have wrongfully denied coverage*, the insurer is estopped from raising policy defenses to coverage.

*Id.* at 1134–35 (emphasis added). Aside from this principle of law relating to estoppel and not waiver, the **Ehlco** court's discussion of estoppel is inapplicable here, given the 481T exclusion. The insurance policy did not provide any coverage. Further, the insurer is only estopped (or waives its rights according to the Hintons) when the denial of coverage was wrongful. Here, it was not. Moreover, as discussed below, Pekin did actually file a declaratory-judgment action against C&S and the Hintons.

¶59. Also, the Hintons maintain that Pekin's later reservation-of-rights letter to C&S in July 2016 and its provision of a defense to C&S is an admission by Pekin that it had earlier abandoned C&S or wrongfully denied coverage. In the end, though, this argument does not prevail, given that there is no genuine issue of material fact as to the original denial of coverage, which we have found was proper. The fact that Pekin reconsidered its coverage

25

position does not support either the Hintons' estoppel or waiver arguments. A number of legitimate reasons could have supported Pekin's decision to defend C&S in 2016 other than admission of fault.

¶60. The Hintons did not demonstrate a genuine issue of material fact as to Pekin waiving its coverage defenses under the policy. Their interpretation of the doctrine of waiver is not supported by Mississippi (or Illinois) law. Pekin denied coverage to C&S and did not waive its policy defenses.

### C. Judicial Estoppel

¶61. Throughout their brief, the Hintons claim that the circuit court erred by not granting summary judgment against Pekin on the issue of judicial estoppel. They maintain that Pekin should be judicially estopped from offering any evidence that C&S did not tender its defense to Pekin or that C&S contends that there was no coverage under the policy. We find no merit in the Hintons' argument.

¶62. "Judicial estoppel is designed to protect the judicial system and applies where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007) (internal quotation omitted). "Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013) (internal quotation omitted). Judicial estoppel has three elements: "A party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent

with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Id.* (citing *Kirk*, 973 So. 2d at 991).

¶63. The Hintons maintain that Pekin should be estopped from relying on Cole's testimony that he does not remember tendering C&S's defense to Pekin and that C&S did not believe it had coverage under the policy. The Hintons argue that these two pieces of evidence are at odds with Pekin's representations in an Illinois declaratory-judgment action. On March 25, 2014, Pekin filed a declaratory judgment against TSG, C&S and the Hintons. Pekin represented that "C&S tendered its defense to Pekin for the *Hinton* action" and that "[t]he above contentions of Pekin are, on information and belief, denied by C&S which, in turn, contends that it is covered under the Pekin policy." (Emphasis added.) From a review of the record, the last ruling in the declaratory-judgment action was an entry of default against C&S:

> This Court finds that the default against C&Global [sic] Imports, Inc.[,] entered on June 22, 2014[,] stands and further Orders that the Court has never made any findings on the insurance coverage for C&S Global Imports, Inc.[,] or any Defendant and this Court leaves all issue of coverage to another Court in another jurisdiction. No Judgments have been entered against C&S Global Imports, Inc.

¶64. Pekin's representations in the declaratory-judgment action, though, were not an intentional self-contradiction to obtain an unfair advantage. *Kirk*, 973 So. 2d at 991. Cole's failure to communicate with Pekin forced Pekin to represent to the Illinois court that "upon information and belief" C&S "contend[ed] that it [wa]s covered under the Pekin policy." Cole never executed the policy release that Pekin had sent him. He also stopped returning

27

Manning's phone calls and was difficult to locate. Further, are representations in the record demonstrate that process servers were unable to serve Cole with subpoenas to compel his deposition. By his own admission, Cole only voluntarily appeared at a later court hearing to "get my head out of the sand and try to get this stuff resolved." Also, the record is clear that no adverse ruling or judgment on the issue of insurance coverage was entered. The entry of default clearly stated that the court never made *any findings* on coverage and left those issues to other courts. Thus, we find that Pekin should not be judicially estopped from relying on Cole's testimony.

## CONCLUSION

¶65. For the foregoing reasons, we affirm the circuit court's rulings. The circuit court did not err in denying the Hintons' motion for partial summary judgment or in granting Pekin's motion for summary judgment and in dismissing Pekin from the suit.

¶66. **AFFIRMED.**

**KING, P.J., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., AND KITCHENS, P.J., NOT PARTICIPATING.**