IN THE SUPREME COURT OF MISSISSIPPI

NO. 2023-CA-00019-SCT

*VT HALTER MARINE, INC.*

*v.*

*CERTAIN UNDERWRITERS OF LLOYD'S OF LONDON SUBSCRIBING TO POLICY NUMBER B0507M17PH04660*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2022 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| TRIAL COURT ATTORNEYS: | JOHN PATRICK KAVANAGH, JR. |
| | MICHAEL DAVID STRASAVICH |
| | KYLE STUART MORAN |
| | HEATHER EDWARDS MURPHY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN PATRICK KAVANAGH, JR. |
| | JOHN MARTIN LASSITER |
| | MICHAEL DAVID STRASAVICH |
| ATTORNEYS FOR APPELLEES: | KYLE STUART MORAN |
| | DAVID MICHAEL HURST, JR. |
| | HEATHER EDWARDS MURPHY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 05/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. In this insurance case, faulty workmanship in creating flange plates during ship construction resulted in the cracking of those flange plates that was observed only after installation. The insured incurred significant costs in repairing and replacing the flange plates, and the insurer denied coverage for those costs. The trial court granted summary

judgment in favor of the insurer. Because the insurance policy unambiguously excluded the cost of replacing or repairing improper or defective materials, this Court affirms the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. The underlying facts in this case are not disputed; the parties dispute the application of the insurance policy to the facts.

¶3. VT Halter Marine (VTHM) is a shipbuilder in Jackson County that contracted to build a barge and a tug for a client, with construction beginning in 2018. Certain Underwriters of Lloyd's of London (Underwriters) issued an all-risk insurance policy to VTHM that covered the two vessels while under construction. "Among the materials incorporated into the vessels were 1/2 inch steel flange plates, which are welded into place. Before installation, these plates are bent using a press brake to create a flange . . . ." The press brake operator used an incorrectly sized die to bend more than one thousand of the flange plates, which caused a bend too sharp for the material. Using the wrong die with a bend too sharp for the material caused an overstretching of the steel, which can lead to thinning and cracking. The incorrectly bent flange plates were installed onto the two vessels. Cracking of the installed flange plates was discovered in March 2019. Replacing and repairing the cracked flange plates cost VTHM approximately $3,300,000. VTHM submitted a claim to Underwriters in April 2019 for the cracked flange plates.

¶4. On September 17, 2019, Underwriters denied VTHM's claim in a letter authored by Katie Sales, a solicitor employed by Underwriters. Underwriters concluded that the flanges

2

cracked due to faulty workmanship, and that coverage was consequently excluded under Addendum 2 of the policy. Addendum 2 of the policy provides in pertinent part:

> Subject to the provisions of exclusion (b) of the following paragraph, in the event that faulty design of any part of [sic] parts should cause physical loss of or damage to the Vessel this Insurance shall not cover the cost or expense of repairing, replacing or renewing such part or parts, nor any expenditure incurred by reason of a betterment or alteration in the design. Faulty design shall include, but not be limited to, errors, omissions or deficiencies in plans, drawings, specifications or calculations.
>
> Further, Underwriters shall not pay for any loss, damage or expense caused by or arising in consequence of:
>
> (a) faulty workmanship, or the installation or use of improper or defective materials, unless resulting in destruction, deformation, breaking, tearing, bursting, holding or cracking of the Vessel, or any other like condition, and which loss, damage or expense is not otherwise excluded under the terms and conditions of the War, Strikes and Other Exclusions Clause of the attached Policy; provided that Underwriters in no event shall respond for the cost or expense of repairing, replacing or renewing any improper or defective materials;
>
> (b) faulty production or assembly procedures even if consulting faulty design.

¶5. VTHM did not respond until August 3, 2020, when it sent a letter to Underwriters contesting the denial. On August 14, 2020, Underwriters confirmed its denial of coverage. On September 17, 2020, VTHM filed a complaint against Underwriters for breach of contract. Underwriters answered, again denying that it was liable for coverage for the event in question. The parties filed competing motions for summary judgment. The trial court granted Underwriters' motion for summary judgment. It ruled that the policy "unambiguously excludes coverage for faulty workmanship" and also "specifically excludes

3

payment by Underwriters for the cost or expense of repairing, replacing, or renewing any improper or defective materials."

¶6.     VTHM appeals. It argues that coverage is provided because the flanges were part of the vessel, and coverage for faulty workmanship exists if it results in cracking of the vessel.

## ANALYSIS

¶7.     This Court reviews a trial court's grant of summary judgment de novo. *Hinton v. Pekin Ins. Co.*, 268 So. 3d 543, 551 (Miss. 2019) (quoting *Daniels v. Crocker*, 235 So. 3d 1, 6 (Miss. 2017)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the evidence is viewed in the light most favorable to the nonmoving party. *Hinton*, 268 So. 3d at 551 (quoting *Daniels*, 235 So. 3d at 6).

¶8.     "[T]he interpretation of an insurance policy is a question of law[.]" *Id.* at 552 (internal quotation marks omitted) (quoting *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 967 (Miss. 2014)). An insurance policy is a contract, and consequently must be interpreted based on the meaning of the language used. *Minn. Life Ins. Co.*, 164 So. 3d at 968. Thus, when the policy terms are plain and unambiguous, this Court uses their plain and ordinary meaning and applies the terms as written. *Id.* (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004)). Ambiguous or unclear

4

language is resolved in favor of the insured, and provisions that exclude coverage are construed liberally in favor of the insured. *Id.* (quoting *Noxubee Cnty.*, 883 So. 2d at 1165).

¶9.     The relevant language is: "Underwriters shall not pay for any loss, damage or expense caused by or arising in consequence of . . . faulty workmanship, or the installation or use of improper or defective materials, unless resulting in . . . cracking of the Vessel . . . ; provided that Underwriters in no event shall respond for the cost or expense of repairing, replacing or renewing any improper or defective materials[.]" The parties agree that the root of the damages was faulty workmanship in creating the flange plates, and they agree that the flange plates were cracked and the cracks were discovered after the flange plates were installed. Nothing on the vessels was damaged other than the flange plates, and the costs incurred were solely a result of repairing and/or replacing the cracked flange plates.

¶10.    VTHM points to the policy's broad definition of "Vessel" and argues that the cracking of the flange plates, whether installed or not, constitutes cracking of the "Vessel." The policy states:

> The Subject Matter of this insurance (here in referred to as the Vessel), or the hull, launches, lifeboats, rafts, furniture, bunkers, stores, tackle, fittings, equipment, apparatus, machinery, bollers, refrigeration machinery, insulation, motor generators and other electrical machinery, ordinance, munitions, and appurtenances, including materials, plans, patterns and moulds, staging, scaffolding and similar temporary construction to the extent only that the cost of any of the foregoing is included in the Agreed Value incorporated in or allocated to Hull No. AS DECLARED Type AS DECLARED building at the yard of the Builder at AS DECLARED[.]

It further argues that "improper or defective materials" is a completely separate and distinct concept from "faulty workmanship" and that the two cannot be read together; thus, the

exclusion for the cost of repairing or replacing improper or defective materials does not apply to its claim. It bolsters this arguments with Sales's testimony that the two are separate concepts and that improper or defective materials "suggests some inherent fault with the piece."

¶11. Underwriters counters that any damage to the Vessel must be *resulting*, or subsequent, to be covered, and points to the opinion of VTHM's own employees and brokers that the damage was excluded. Underwriters also argues that all-risk insurance policies are typically not intended to cover damage that is the fault of the insured, as that constitutes a business risk to be borne by the insured. Underwriters maintains that the trial court was correct in holding that the exclusion of coverage for replacing or repairing improper or defective materials applies to the claims. Underwriters further urges that the flange plates cracking did not constitute cracking of the Vessel.

¶12. First, while the parties emphasize the opinions of the opposite party's employees regarding the policy's interpretation, those opinions are irrelevant to a resolution of the issue, as the issue is strictly one of policy interpretation. **Hinton**, 268 So. 3d at 552. In **Hinton**, which involved determining whether an exclusion applied, this Court found that because the interpretation of an insurance policy is a legal question, an employee's opinion as to coverage "is not relevant to the resolution of the issue and, therefore, does not create a fact issue for the jury." **Id.** Thus, this Court need not consider the competing opinions of the parties' employees when interpreting the insurance policy, as this case involves a purely legal issue of contract interpretation.

¶13.   The United States Court of Appeals for the Fifth Circuit has held that "all risk" policies are not intended to cover the cost of repairing the insured's own mistakes. *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267 (5th Cir. 1990).  While *Trinity* did not involve interpreting any specific exclusion, the Fifth Circuit distinguished between an accident resulting from the insured's fault, and the cost of repairing the underlying issue itself. *Id.* at 270-71 ("This reflects an interpretation of the all risks policy to cover accidents resulting from defective design or workmanship, but not the cost of repairing the defect itself.").  But in this case, the policy specifically addressed the issue of faulty workmanship and is distinguishable because general intent need not be examined.  VTHM relies heavily on an unpublished federal district court opinion that touches on the same exclusion, but that case is not directly applicable.  In it, the insured installed engines, and then built external piping systems to connect to the engines.  *N. Assurance Co. of Am. v. C&G Boat Works, Inc.*, No. 11-00283-KD-N, 2012 WL 1712594, at *3 (S.D. Ala. May 15, 2012) (not reported).  The piping systems malfunctioned and damaged the engines, the insured made a claim for the engine damage, and the insurance company excluded the loss due to faulty production. *Id.* at *3-*5.  The trial court held that the insurance company failed to meet its burden of proof that the production was "faulty." *Id.* at *11-*12.  In *dicta*, the trial court dismissed the insurance company's argument that the definition of "Vessel" included only the hull, and found that it included the ship's main engines. *Id.* at *13.  But in that case, nothing indicates that the insured was seeking damages for replacing the faulty external piping system itself; rather, the case indicates that the insured's claim was for the resulting engine damage. *See*

7

*generally id.* The issue before us differs in that it is a claim regarding the defective parts themselves.

¶14.    Ultimately, the interpretation of the exclusion at issue is straightforward.  VTHM's argument that "faulty workmanship" and "improper or defective materials" are two entirely separate concepts that cannot possibly be read together is unpersuasive.  In this case, faulty workmanship resulted in improper or defective materials being installed.  It is easy to imagine a case in which faulty workmanship would not do so; for example, if a worker negligently overtightened a bolt in the ship and cracked the nearby, proper parts of the vessel in doing so, coverage may exist, as no improper or defective materials existed for which coverage for repair or replacement would be excluded.  But in this case, the faulty workmanship directly resulted in improper materials being installed.  And, as the trial court held, the cost of replacing and/or repairing improper or defective materials themselves is unambiguously excluded from coverage.  This Court consequently affirms the trial court's grant of summary judgment in favor of Underwriters.

## CONCLUSION

¶15.    Improper materials were installed in two of VTHM's ships due to faulty workmanship, and the only resulting damage was to the improper materials themselves.  VTHM's claim was exclusively for the costs of repairing and/or replacing the improper materials installed.  The insurance policy at issue unambiguously excludes coverage for replacing or repairing improper or defective materials.  This Court therefore affirms the trial court's grant of summary judgment in favor of Underwriters.

¶16.    **AFFIRMED.**

     **RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**